# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JIMMY HENDRIX JR.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-522-M |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jimmy Hendrix Jr. appeals the denial of his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act.[1] Chief United States District Judge Vicki Miles-LaGrange referred this matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b). Having reviewed the record,[2] including the transcript of the administrative hearing and the decision of the administrative law judge ("ALJ"), as well as the pleadings and briefs of the parties, the undersigned recommends that the decision of the Commissioner be REVERSED and REMANDED.

---

[1] In his Complaint, Plaintiff requests judicial review of both the denial of his claim for DIB and the denial of his claim for SSI. *See* Compl., Doc. No. 1, at 1-2, 4. In his opening brief, however, Plaintiff states that he seeks judicial review of the denial of his claim for DIB and does not mention the claim for SSI. *See* Pl.'s Br., Doc. No. 13, at 4.

[2] Citations to the administrative record, Doc. No. 10, are as "R. __," using the pagination assigned by the Social Security Administration in the certified copy of the transcript of the administrative record. Citations to other documents filed in this Court adhere to the pagination assigned by the Court's electronic filing system.

PROCEDURAL HISTORY

On or about October 25, 2004, Plaintiff filed applications for DIB and SSI with the Social Security Administration ("SSA"), alleging a disability onset date of October 3, 2004. *See* R. 35, 818-21, 823.[3] Following preliminary administrative denials of his applications, Plaintiff at his request appeared with an attorney for a hearing before an ALJ on May 2, 2007, in Oklahoma City, Oklahoma. R. 39, 229-68. The ALJ issued an unfavorable decision on January 17, 2008. R. 39-51. After the SSA Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner, Plaintiff then appealed to this Court. R. 97-99; *Hendrix v. Astrue*, No. CIV-10-1189-M (W.D. Okla. filed Nov. 4, 2010); *see* 20 C.F.R. §§ 404.981, 416.1481.

On January 18, 2011, this Court remanded the case to the Commissioner upon the parties' agreed request, which noted that "significant portions of the recording for the May 2, 2007 . . . administrative hearing [were] inaudible." R. 52-55; *see also* R. 233-46 (reflecting "inaudible" extensively throughout medical expert's testimony). Another hearing was conducted before an ALJ on November 2, 2011, in Oklahoma City, Oklahoma, at which Plaintiff again appeared with an attorney. R. 17, 831-78. The ALJ issued an unfavorable decision on May 21, 2012.[4] R. 17-31. The SSA Appeals Council

---

[3] Plaintiff's initial application for SSI was included in the record, but his application for DIB was not. *See* R. 818-21. Other documents in the record reflect that a concurrent application for DIB was filed. *See* R. 35, 823.

[4] Upon remand, the Appeals Council noted that Plaintiff had "filed a subsequent application for Title II and Title XVI disability benefits on January 5, 2011." R. 58. The Appeals Council found that the remand rendered the subsequent applications duplicates

2

denied Plaintiff's request for review. R. 6-7. Thus, the second decision of the ALJ is now the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Thereafter, Plaintiff commenced this appeal.

THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process to determine whether Plaintiff was disabled and therefore entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 3, 2004, the alleged disability onset date. R. 20. At step two, the ALJ determined that Plaintiff has the following severe impairments: "morbid obesity; diabetes mellitus; congestive obstructive pulmonary disease; hypertension; episodic congestive heart failure; arthralgias; atrial fibrillation, stable; and, obstructive sleep apnea." R. 20.

At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22. At step four, the ALJ considered Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff could perform a limited range of light and sedentary work with certain exertional and non-exertional limitations, including that Plaintiff "must have the ability to alternate his sitting and standing position at his workstation." *See* R. 23-28, 29. The ALJ determined that Plaintiff's RFC prevents Plaintiff from returning to his past relevant work. R. 28-29. At step five, the ALJ relied

---

of those still being considered and, thus, directed the ALJ to associate the claims and consider them together. R. 58. The ALJ did so. R. 17.

on the testimony of a vocational expert ("VE") and determined that Plaintiff could perform occupations offering significant numbers of jobs in the national economy. R. 29-30. Accordingly, the ALJ determined that Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 30.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence" is "more than a mere scintilla" of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). Although the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

In this action for judicial review, Plaintiff contends that the ALJ erred in assessing Plaintiff's RFC by failing to specify the parameters of Plaintiff's need to alternate between sitting and standing. *See* Pl.'s Br., Doc. No. 13, at 7-10. Plaintiff contends that this error similarly occurred during the ALJ's hypothetical questions to the VE, thereby tainting the ALJ's finding at step five that Plaintiff could perform occupations offering significant numbers of jobs in the national economy. *See id.* Plaintiff also contends that

the VE failed to offer a basis for her testimony's deviation from the *Dictionary of Occupational Titles* and that the jobs identified by the VE do not exist in significant numbers. *See id.* at 8-12. Plaintiff further contends that the ALJ failed to properly consider certain medical evidence in the record, including the opinions of two treating physicians, when assessing Plaintiff's RFC. *See id.* at 12-15. Finally, Plaintiff contends that the ALJ failed to properly analyze Plaintiff's complaints of pain and failed to properly make and explain findings as to Plaintiff's credibility. *See id.* at 15-17.

ANALYSIS

As noted, in assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform a limited range of light and sedentary work with certain exertional and non-exertional limitations, including that Plaintiff "must have the ability to alternate his sitting and standing position at his workstation." *See* R. 23-28, 29. When an ALJ finds that a claimant cannot perform the full range of sedentary work because, for instance, the claimant needs to alternate between sitting and standing more frequently than sedentary work allows—i.e. more frequently than every two hours—the ALJ's assessment of the claimant's RFC "must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *6-7. The RFC assessment must also address the length of time needed to stand. *See id.* at *7; *Maynard v. Astrue*, 276 F. App'x 726, 731 (10th Cir. 2007); *Armer v. Apfel*, No. 99-7128, 2000 WL 74368, at *2 (10th Cir. June 9, 2000). Further, "[t]he RFC assessment must include . . . an explanation of how the evidence [on] file was considered in the assessment." SSR 96-9p, 1996 WL 374185, at *5. The specificity requirements for alternating between sitting and standing

5

are "also relevant to assumptions [regarding] whether [the claimant] can perform light work." *See Vail v. Barnhart*, 84 F. App'x 1, 5 (10th Cir. 2003) (citing 20 C.F.R. § 404.1567(b) (noting "light work" includes jobs that "involve[] sitting most of the time with some pushing and pulling of arm or leg controls")); SSR 83-12, 1983 WL 31253, at *4 (noting "ongoing work processes" in unskilled sedentary or light work jobs often limit a person's ability to "sit or stand at will").

When a sit-stand option is assessed as part of a claimant's RFC for a limited range of sedentary or light work, the occupational bases for unskilled work in those categories are eroded to at least some degree. *See* SSR 96-9p, 1996 WL 374185, at *5-6. As a result, an ALJ typically must consult a vocational resource, often a vocational expert, to assess whether the claimant can perform occupations offering significant numbers of jobs in the national economy. *See id.*; *Vail*, 84 F. App'x at 5; *see also* SSR 83-12, 1983 WL 31253, at *4 (recommending expert testimony "to clarify the implications for the occupational base" when a sit-stand option is required). If an ALJ elicits testimony from a VE for this purpose, the ALJ's hypothetical questions must be based on the RFC assessment, which must include the specificity detailed above. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). Otherwise, the VE's responses may not be relied upon as substantial evidence for the ALJ's decision. *See id.*

The ALJ in this case, upon finding that Plaintiff's need to alternate between sitting and standing limits his capacity to perform the full range of sedentary and light work, was required to specify the parameters of that sit-stand limitation, both in her decision and in the hypothetical questions posed to the VE. In her decision, the ALJ stated only that

6

Plaintiff "must have the ability to alternate his sitting and standing at his workstation," and for questions posed to the VE, the ALJ stated only that the hypothetical person "should be offered the ability for a sit/stand option at the workstation." *See* R. 24, 865. The ALJ, thus, failed to specify the frequency of the needed alternation between sitting and standing, as well as the duration of standing that would be required before sitting again. *See* R. 23-28, 29, 865; SSR 96-9p, 1996 WL 374185, at *5-7; *Maynard*, 276 F. App'x at 731; *Vail*, 84 F. App'x at 5.

Defendant concedes that the ALJ's failure to be more specific in the RFC assessment was error but contends that the error was harmless based on the ALJ's findings at step five. *See* Def.'s Br., Doc. No. 14, at 7-8. In particular, Defendant asserts that the frequency with which Plaintiff needs to alternate between sitting and standing can be deduced as once per hour based on the VE's testimony. *See id.*

As an initial matter, the specificity missing from the ALJ's assessment of Plaintiff's RFC cannot be inferred from the medical opinion evidence. Upon review of the relevant opinions and associated evidence, no consensus emerges as to the frequency with which Plaintiff must alternate between sitting and standing or the length of time needed to stand. For example, in assessing Plaintiff's RFC, the ALJ relied upon the testimony of a non-examining medical expert, Durado D. Brooks, M.D., M.P.H., whose "opinion, findings, and assessment" were accorded "substantial weight and consideration as consistent with the treating medical records, objective medical evidence, and record overall" and were "incorporated into the determination of [Plaintiff's RFC]." R. 28. With minor exceptions, the ALJ's assessment of Plaintiff's RFC matches Dr. Brooks'

7

testimony. *Compare* R. 23-24 (presenting ALJ's assessment of Plaintiff's RFC), *with* R. 846-47 (presenting Dr. Brooks' testimony as to Plaintiff's "limitations, based on the available record"). Based on the records reviewed before the hearing, Dr. Brooks testified that Plaintiff would need, among other limitations and restrictions, "the ability to alternate between sitting and standing." R. 845-47. Dr. Brooks did not specify the parameters of the sit-stand option, and neither the ALJ nor Plaintiff's attorney asked Dr. Brooks to do so. *See* R. 847-54. A post-hearing interrogatory response by Dr. Brooks did not address his assessment that Plaintiff would need to alternate between sitting and standing. R. 850.

Further, in 2006, treating physician Rebecca Biorato, D.O., opined that Plaintiff could sit for 10 to 30 minutes at one time during an 8-hour workday. *See* R. 527-30. Dr. Brooks testified that he "did not see sufficient documentation in the available record to support the vast majority of [the] restrictions" assessed by Dr. Biorato, but did not specifically address Dr. Biorato's assessment of Plaintiff's sitting limit. *See* R. 850. In the RFC assessment, the ALJ referenced Dr. Brooks' testimony and found that Dr. Biorato's statements therein were entitled to "some, but minimal weight or consideration." R. 27, 28. Like Dr. Brooks, the ALJ cited specific findings in Dr. Biorato's assessment as unsupported in the record but did not specifically address the sitting limit. *See* R. 28.

Another medical source statement in the record—a physical RFC assessment completed in 2004 by treating physician Dr. Baumgardner—indicated that Plaintiff could sit for up to 4 hours without interruption during an 8-hour workday. R. 376. The ALJ

accorded this assessment "some probative value, but not great weight or consideration" because Dr. Baumgardner had provided "limited treatment of [Plaintiff] during the finite period of [a] hospitalization and [Dr. Baumgardner's assessment was] not supported by the ongoing treating evidence." R. 28. The ALJ did, however, accord "substantial weight" to a state agency physician's assessment in 2005 of Plaintiff's physical RFC (Exhibit 7F, R. 334-42) because it was "generally consistent with the treating medical records, objective medical evidence, and record overall," as well as "subsequently affirmed by [Dr. Brooks]." R. 26. This assessment did not find that Plaintiff would need to alternate between sitting and standing. *See* R. 335.

In short, the ALJ's analysis of these opinions does not demonstrate a clear finding regarding the parameters of the limitation on sitting and standing. Nor may the gap be filled through deductions based on the testimony of the VE, as Defendant contends.

As noted, at the November 2, 2011 hearing, the ALJ questioned the VE about a hypothetical person who, among other limitations, "should be offered the ability for a sit/stand option at the workstation." R. 865. In response, the VE suggested that the hypothetical person could perform the light work required of a "chauffer or courier driver," which would provide a "sit/stand [option] throughout the workday" that would be "not necessarily at will, but typically . . . once an hour [during] delivery activities." *See* R. 866. The VE also suggested that the hypothetical person could perform the light work required of a "rental delivery driver," which would be "similar in terms of the sit/stand [option]." R. 867. The VE then suggested two sedentary unskilled jobs that the hypothetical person could perform—"grinding machine operator" and "envelope

addresser"—neither of which would provide an "at-will sit/stand option, but [would] allow the individual to stand/stretch/change positions as much as each 30 minutes, but not [to] take extended periods away from the work site." R. 867. The VE also agreed that the sedentary unskilled occupation of "surveillance system monitor certainly would be appropriate" for the hypothetical person to perform, but the VE did not offer any specific testimony as to the sitting and standing requirements for that job. *See* R. 868.

Citing *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013), Defendant deduces from the VE testimony that "the ALJ believed the hypothetical individual would need to alternate sitting and standing at least every hour" because the ALJ "did not correct the VE when she identified jobs that allowed alternating at least every hour." Def.'s Br. at 8. Even setting aside the fact that the VE's testimony was not as precise as characterized by Defendant, the undersigned finds this argument unpersuasive. In *Jimison*, an ALJ had presented a hypothetical question to a VE involving a person who could perform the full range of sedentary work "'either sitting down or standing up, whichever way she wanted to.'" 513 F. App'x at 792. Through additional discussion, the plaintiff's attorney clarified that the VE understood the limitation as one requiring the ability to alternate between sitting and standing at will. *See id.* Based on these exchanges, the *Jimison* Court reasoned that "there [could] be no question that [an at-will sit-stand option] was the ALJ's finding because he did not correct the VE when the VE told [the plaintiff's] attorney that the vocational assessment was based on that assumption." *Id.*

In the case now before the Court, however, the ALJ's hypothetical did not suggest any of the missing details and the VE's testimony included no corresponding clarification. In other cases in which an ALJ has provided ambiguous details for a sit-stand option without clarification, courts have found the specificity requirements to be unsatisfied. *See*, *e.g.*, *Armer*, 2000 WL 74368, at *2-3 (holding as impermissibly vague ALJ's statement that "'claimant would need to change positions from time to time to relieve his symptomatology'"). Even when a lack of specificity as to a sit-stand option was brought to the ALJ's attention by the VE, but no definitive clarification resulted, a court was unwilling to infer a finding by the ALJ from the VE's testimony. *See Verstraete v. Astrue*, No. 11-1404-SAC, 2013 WL 238193, at *2-3, 5 (D. Kan. Jan. 22, 2013).

Moreover, because none of the occupations discussed by the VE in this case were found to permit an at-will sit-stand option, the deductions to be drawn from the VE's testimony must be more precise than in *Jimison* to be meaningful. The VE stated that the occupations he was citing would allow a sit-stand option with a frequency of 30 minutes in some instances and an hour in others. R. 866-68. If Plaintiff needs to change positions more frequently than every 30 minutes—as could be found from Dr. Biorato's assessment and from Plaintiff's testimony, neither of which were entirely discredited or, in any event, refuted as to this point—Plaintiff would not be able to perform the jobs identified by the VE. In any event, because it cannot be assumed that the ALJ was discussing a frequency of less than 30 minutes, it does not follow that the sit-stand option

found by the ALJ would permit the occupations discussed by the VE. *See* R. 30; SSR 96-9p, 1996 WL 374185, at *5-6; *Vail*, 84 F. App'x at 5; SR 83-12, 1983 WL 31253, at *4.[5]

Finally, Defendant, apparently referring to Plaintiff's testimony, argues that "the VE heard earlier testimony during the hearing that Plaintiff could sit anywhere from 30 minutes to one hour at a time" and thus "likely assumed that the ALJ contemplated an individual who needed a sit/stand at least every hour." Def.'s Br. at 8 (citing R. 862-63). But this does not accurately, or at least completely, describe Plaintiff's testimony. The hearing included the following exchanges between the ALJ and Plaintiff:

> Q . . . [Dr. Biorato] said that you could sit about 10 to 30 minutes at a time, up to two hours in an eight-hour day. Does that sound about what you do?
>
> A Yeah.
>
> . . .
>
> Q . . . So, can you sit for an hour, or are you limited to 10 to 30 minutes?
>
> A Well, I can sit -- it's like here. I can sit. I just have to get up and, like, let my back and hips take a break for a minute --
>
> Q Okay.
>
> A -- and then, I can usually sit back down.

R. 862-63.

---

[5] Further, when the VE was presented with Dr. Biorato's assessment—Exhibit 16F—the VE testified that a person with the limitations and restrictions in that assessment could not perform any job. R. 871. As noted, the assessment indicated, among other things, that Plaintiff could sit for only 10 to 30 minutes at one time; however, the VE was not asked to address the individual limitations and restrictions in that assessment, which was, in part, significantly more restrictive than the hypothetical based on Dr. Brooks' assessment. *See* 871. *Compare* R. 527-28 (presenting Dr. Biorato's assessment), *with* R. 865 (presenting hypothetical based on Dr. Brooks' assessment). Thus, the undersigned cannot determine whether a particular limitation/restriction or combination of the same resulted in the VE's testimony as to Dr. Biorato's assessment.

12

On this record, as detailed above, the ALJ erred in not providing the required specifics of the sit-stand option and such error may not be deemed harmless based on inferences from either the medical opinion evidence or the VE's testimony. Accordingly, the Commissioner's decision should be reversed and remanded for further consideration of Plaintiff's RFC in accordance with the discussion above.[6] *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (holding that post hoc effort to salvage ALJ's decision through usurpation of fact-finding role is improper). Plaintiff's additional claims of error may be remedied through the case's treatment on remand, and, thus, the undersigned declines to address those claims. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the decision of the Commissioner be REVERSED and REMANDED for additional proceedings consistent with the above discussion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by September 29, 2014, in accordance with

---

[6] Plaintiff requests an award of benefits instead of a reversal and remand of his case. *See* Pl.'s Br. at 18-19. However, the undersigned finds that an immediate award of benefits is not warranted. Although this matter has been pending for approximately ten years, the undersigned finds that additional fact-finding consistent with the above discussion could serve a useful purpose and not merely delay the receipt of benefits, which are, by no means, guaranteed in this case. *See Salazr v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

13

28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 15th day of September, 2014.

/s/ Charles B. Goodwin

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE